UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-20059-CR-ALTONAGA/REID(s)(s)

**UNITED STATES OF AMERICA**

vs.

**CHENGZHE WANG,**

**Defendant.**
_____/

**THE UNITED STATES OF AMERICA'S RESPONSE IN OPPOSITION TO DEFENDANT CHENGZHE WANG'S MOTION TO DISMISS THE SECOND SUPERSEDING INDICTMENT IN PART**

The United States of America, by and through the undersigned Assistant United States Attorney, hereby submits its response in opposition to defendant Chengzhe Wang's motion to dismiss the second superseding indictment in part, specifically the allegation regarding his 2023 trip to Dallas, Texas. For the reasons set forth below, this Court should deny the motion.

**FACTUAL BACKGROUND**

On January 14, 2025, defendant Chengzhe Wang arrived at the Miami International Airport on an international flight from Mexico City, Mexico, with the intent of boarding a flight leaving the next day for Managua, Nicaragua. In making this trip, Wang possessed a passport issued by the People's Republic of China ("PRC") bearing a number consistent with the one identified in the tip.

Upon Wang's entry into the United States, a Customs and Border Protection ("CBP") Officer interviewed Wang. At the time of the preliminary interview, the CBP Officer was familiar

with the tip. Prior to starting the interview, the CBP Officer asked if Wang wished to have a Mandarin interpreter present, which Wang declined. During this interview, Wang claimed that he had no connection to any foreign government nor was he a member of any Chinese Communist Party organization. He claimed that his employer, XCMG, was a private company. He also claimed that he was a member of the Communist Youth League of China in middle and high school, but that his membership was no longer active. The CBP Officer then referred Wang to secondary inspection.

During a search of Wang's electronics, including his cellular phone, CBP Officers discovered a photograph of a badge or credential holder with a seal and wording in Mandarin Chinese inscribing "Administrative Law Enforcement." The photograph appears to depict an official credential or badge case likely for use by PRC law enforcement or other PRC government agency. Additionally, CBP Officers discovered a photograph of a lapel pin bearing a red PRC flag with an inscription written in Mandarin.

Following the search, CBP Officers interviewed Wang again. During this second interview, Wang admitted that his employer, XCMG, was owned by the Chinese government. When asked why he initially lied, Wang stated that XCMG advised him not to disclose his company's ties to the Chinese government. Wang also admitted that his membership in the Chinese Communist Youth League was still active. Then, when discussing a 2023 trip from Seoul, South Korea, to Dallas, Texas, Wang initially claimed that he traveled for vacation and to visit a friend for three days. However, records related to the 2023 entry noted that, upon entry into the United States, Wang represented, at that time, that he was entering the country to travel to Houston,

2

Texas, for business meetings. After being advised of what the 2023 records stated, Wang admitted that he traveled to Dallas, Texas, with the intent of going to Houston, Texas, for a business meeting but claimed that he change his mind when he realized that Houston was three hours away from Dallas.

After speaking with Wang, a CBP Officer drafted a written statement memorializing his interview with Wang. The typed statement included the following exchange:

| SPEAKER | STATEMENT |
|---|---|
| Agent | What is the name of your employer? |
| Wang | XCMG |
| Agent | What is your job title position at your employer? |
| Wang | Production Manager |
| Agent | What does XCMG sell? |
| Wang | Heavy machinery |
| Agent | During the preliminary interview, you stated the company XCMG was a private company. Is this correct? |
| Wang | Yes |
| Agent | During the preliminary interview, you changed your statement and stated XCMG is a Chinese government owned company. Is this correct? |
| Wang | Yes. |
| Agent | Is XCMG owned by the Chinese Communist Party government? |
| Wang | Yes. |
| Agent | Why were you not truthfully [sp] about XCMG being owned by the Chinese Communist Party government? |
| Wang | Because my company does not allow us to show the company's relationship with the Chinese government. |

The written statement also memorialized the following exchange:

| SPEAKER | STATEMENT |
|---|---|
| Agent | During the basic electronic media search of your cellphone device, a photograph was found dated April 2024, with your hand holding a pin[.] I am showing you this photograph, can you explain what this pin is? |
| Wang | Communist Youth League of China. |
| Agent | During the Preliminary interview, you stated you were only a member of the Communist Youth League of China in middle school and high school. Is this |

3

| | |
|---|---|
| | correct? |
| Wang | Yes. |
| Agent | Are you currently still and [sp] active member of this Communist Youth League of China? |
| Wang | Yes |
| Agent | Is the Communist Youth League of China part of the Chinese Communist Party government? |
| Wang | Yes. |

Wang subsequently signed the last page of the statement.

After speaking with CBP, the Federal Bureau of Investigation (FBI) conducted a separate interview with Wang, which was audio recorded. Prior to starting the interview, the FBI asked if Wang wished to have a Mandarin interpreter present, which Wang declined. During this interview, the FBI and Wang had the following exchange:

| SPEAKER | STATEMENT |
|---|---|
| Agent | [W]hen you come to the US, what did [your employer] tell you in China to expect? From here, from the Customs and Border Protection officers. What type of things did they tell you? What instructions? |
| Wang | They don't give me any instructions to answer these questions. I answer each by myself. |
| Agent | But, they didn't tell you, "Hey, they're gonna ask you questions, you know about what you do", you never had that conversation? |
| Wang | No, they don't tell me about this they just said don't say too much about relationships with the company and the government. |
| Agent | Okay. Why do you think that is? Why would they give you that specific instruction? |
| Wang | Because I just told American government has bad relationship with Chinese government so they want to hide [UI] - |
| Agent | [OV] They want to hide that? |
| Wang | Yeah. |

Then, when asked if he was ever a member of the Chinese Communist Party, Wang responded that he was "junior" group, referring to the Communist Youth League of China. He admitted that he was still a member because a member "needed to quit it by yourself" to be removed from the

4

organization, adding that removal was not automatic. Following this, the FBI and Wang had the following exchange:

| SPEAKER | STATEMENT |
|---|---|
| Agent | You admitted to us that before you came, verbally, your boss gave you instructions on what to say you know in regards to what you do with the company. Yes or no? |
| Wang | So sorry? |
| Agent | When you – before you came, you told us your boss gave you verbal instructions. |
| Wang | Yeah, yeah, yeah. |
| Agent | About what to say. |
| Wang | Yes. |
| Agent | He was essentially telling you not to tell the truth because of the company you work for and you even said, because the Chinese government and the US don't have a good relationship, correct? |
| Wang | Yes. |
| Agent | Okay. This is making a false statement. When you arrived, you made a false statement regarding that. We want to help you, man. |
| Wang | Yes, I know. |

After the interview, the FBI arrested Wang and took him into federal custody.

## ARGUMENT

Under Federal Rule of Criminal Procedure 12(b), a court may dismiss an indictment "where there is an infirmity of law in the prosecution[,]" but not "on a determination of facts that should have been developed at trial. United States v. deVegter, 198 F.3d 1324, 1326-27 (11th Cir. 1999) (quoting United States v. Torkington, 812 F.2d 1347, 1354 (11th Cir. 1987)). "It is well-settled that a motion to dismiss an indictment does 'not provide for a pre-trial determination of the sufficiency of the evidence,' and that '[t]he sufficiency of a criminal indictment is determined from its fact." United States v. McGill, 634 Fed. Appx. 234, 235 (11th Cir. 2015 (quoting United States v. Salman, 378 F.3d 1266, 1268 (11th Cir. 2004)). To avoid dismissal, the charging document

5

must contain the elements of the offense and sufficiently notify the defendant of what the United States must prove. See United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006).

On April 1, 2025, a federal jury empaneled in the Southern District of Florida returned a second superseding indictment against Wang [ECF No. 51]. The second superseding indictment charged Wang with

> knowingly and willfully mak[ing] a false, fictitious, and fraudulent statement and representation as to a material fact, in that, he falsely represented that his employer is a privately-owned company with no ties to the Chinese government; he was no longer a member of the Communist Youth League of China; and that his 2023 trip from Seoul, South Korea, to Dallas, Texas, was for vacation and to visit a friend, when, in truth and in fact, as the defendant knew, his employer is owned by the Chinese government at least in part; he is still an active member of the Communist Youth League of China; and that his 2023 trip from Seoul, South Korea, to Dallas, Texas, was for the purpose of attending business meetings in Houston, Texas, in violation of Title 18, United States Code, Section 1001(a)(2).

[ECF No. 51]. To convict him of this offense, the United States would need to prove the following elements beyond a reasonable doubt at trial:

| | | |
|---|---|---|
| First: | | Defendant made the statement as charged; |
| Second: | | The statement was false; |
| Third: | | The falsity concerned a material matter; |
| Fourth: | | Defendant acted willfully, knowing that the statement was false; and |
| Fifth: | | The false statement was made or used for a matter within the jurisdiction of a department or agency of the United States. |

*Eleventh Circuit Pattern Jury Instructions*, No. O36 (2019); see United States v. Godinez, 922 F.2d 752, 755 (11th Cir. 1991).

In his motion to dismiss, Wang moves to dismiss the portion of the second superseding

indictment (hereinafter "SSI") referring to his 2023 trip from Seoul, South Korea, to Dallas, Texas. Contrary to his contention, the SSI identifies the criminal statute that he is alleged to have violated and sets forth its elements with sufficient specificity. As for the 2023 trip in question, the SSI properly states that, on or about the dates in question, Wang represented that he traveled to Dallas, Texas, from Seoul, South Korea, for vacation and to visit a friend, when in truth, that was not the reason. This falsehood is material because the "purpose" at the time of his 2023 entry was related to business meetings involving his employer, XCMG, whose ties to the Chinese government Wang attempted to obfuscate.

During his meeting with CBP in 2023, he did not claim that he was traveling for vacation or to visit a friend – if he seeks to argue that he changed his mind after traveling on an international flight that lasted more than twelve hours for business meetings because he allegedly did not realize that traveling from Dallas to Houston was roughly a three-hour drive, he is free to do so. However, a motion to dismiss is an improper vehicle to test his legal theories. It is for the jury to decide if it is more plausible that Wang changed his mind after taking an overseas flight or if he knowingly and willfully lied because he did not want to admit that he had previously traveled into the United States at the behest of his Chinese state-owned employer. His statements are in opposition to one another and materially false. His motion to dismiss should be denied on this basis.

Wang then contends that his motion should be granted because the word "purpose" is ambiguous and void for vagueness. However, he cites no legal authority that supports this contention nor does he propose a definition for "purpose" that this Court should consider. The word should receive its natural meaning within the English language – the very language that

Wang agreed to use when he spoke with CBP and the FBI during his detention.

At trial, the United States will present testimony from the CBP Officers and FBI Special Agents who questioned Wang regarding this particular trip in separate interviews. They will confirm that Wang understood the nature of the questioning and did not exhibit any confusion over the words used. Because this is best suited for argument before a jury and not a pretrial motion to dismiss, this Court should deny the relief sought.

## CONCLUSION

For the reasons stated above, this Court should deny defendant Chengzhe Wang's motion to dismiss.

Respectfully submitted,

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

By: _____
AJAY J. ALEXANDER
Assistant United States Attorney
Court ID No. A5502506
99 N.E. 4th Street, 8th Floor
Miami, Florida 33312
(786) 385-4604
Ajay.Alexander@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the April 4, 2025, the undersigned electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

_____
AJAY J. ALEXANDER
Assistant United States Attorney